ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR 2 6 2005

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KAN PLASAI | § | |
| | § | |
| Plaintiff, | § | |
| | § | NO. 3-04-CV-2996-BD |
| VS. | § | |
| | § | (Consolidated With: |
| NORMAN Y. MINETA, | § | No. 3-04-CV-1477-BD) |
| Secretary of Transportation, ET AL. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Defendants Michael C. Mills, Thomas E. Stuckey, Jay LaFlair, and Peter Kerwin have filed a motion to dismiss plaintiff's claims for civil rights violations under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and for negligence and intentional infliction of emotional distress under Texas law. For the reasons stated herein, the motion is granted.

I.

Plaintiff Kan Plasai, a United States citizen of Asian descent, is employed by the Federal Aviation Administration ("FAA") as a computer specialist in the Dallas Flight Standards District Office ("DFSDO"). (Def. App. at 38). Among her responsibilities are administering the Local Area Network, upgrading computer equipment, and ensuring system conformity. (*Id.*). Defendant Michael C. Mills is plaintiff's immediate supervisor. Defendants Thomas E. Stuckey and Peter Kerwin are FAA administrators in the Fort Worth regional office. Defendant Jay LaFlair is an FAA investigator. (*Id.* at 4).

In February 2003, plaintiff became suspicious that Melissa Kerwin, a receptionist in the DFSDO and Peter Kerwin's daughter, was using her work computer to access personal e-mail accounts and on-line chat rooms. (*Id.* at 37).[1] Rather than report her suspicions to the proper authorities, plaintiff copied certain files from Melissa's computer and took them home to her husband, Garry Schaffer, a self-employed contractor. (*Id.* at 23). Schaffer then notified Peter Kerwin via e-mail of Melissa's unauthorized computer use. (*Id.* at 10). Peter, in turn, forwarded the e-mail to Ron Nelson, his division manager, who initiated a formal investigation of both Melissa and plaintiff. (*Id.* at 27).[2]

As part of this investigation, FAA security officers confiscated and retained plaintiff's computers for four weeks, requiring her to work overtime in order to meet federal software deployment deadlines. (*Id.* at 36). Plaintiff alleges that the manner in which the investigation was conducted and the delay in returning her computers was contrary to a similar situation involving a Caucasian employee who reported computer abuse by a receptionist three years earlier. (Plf. Orig. Compl. at 7, ¶ 22). According to plaintiff, defendants subjected her to disparate treatment on account of her race, color, and national origin and in retaliation for reporting Melissa's illegal conduct. (*Id.* at 8, ¶ 24). Plaintiff further contends that defendants conspired to manufacture evidence against her in order to protect Melissa and conducted their investigation in a harassing, intimidating, and abusive manner. (*Id.* at 7-8, ¶¶ 19-20).

On or about June 4, 2003, while still under investigation, plaintiff discovered that two FAA employees, Fred Raymond and Tom Hoover, had reconfigured their computers in violation of agency

---

[1] Plaintiff later confirmed that Melissa used her work computer to access "livejournal.com," an on-line chat room where she posted entries critical of President Bush and other messages containing vulgar and inappropriate language. (*See* Def. App. at 29, 36; Plf. App., Exh. F-27 at 1-4).

[2] Disclosing information stored on an FAA computer to someone not affiliated with the United States government is a violation of agency policy. (*See* Def. App. at 4, *citing* FAA HRPM § 4.1, *et seq.*).

policy. (*Id.* at 8, ¶ 25). When she reported her findings to Michael Mills, he accused plaintiff of "snooping around other employee's computers." (*Id.* at 8, ¶ 28). Later that month, plaintiff was placed on administrative leave after her husband allegedly confronted Hoover in the parking lot. (Plf. App., Exh. F-1e at 2). Plaintiff was not given a hearing or an opportunity to challenge her suspension in any fashion. (Plf. Orig. Compl. at 10, ¶ 34).

After exhausting her administrative remedies, plaintiff sued defendants in federal district court for: (1) race and national origin discrimination under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e-16, *et seq.*; (2) civil rights violations under *Bivens*; and (3) negligence and intentional infliction of emotional distress under Texas law.[3] Defendants now move to dismiss plaintiff's *Bivens* and state tort claims. The motion has been fully briefed by the parties and is ripe for determination.

## II.

Although styled as a motion to dismiss, defendants rely on matters outside the pleadings to support their motion. The court therefore treats the motion as one for summary judgment under Fed. R. Civ. P. 56. *See Morales v. Dep't of the Army*, 947 F.2d 766, 768 (5th Cir. 1991), *citing* FED. R. CIV. P. 12(c). Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[3] Plaintiff filed a separate lawsuit against Norman Y. Mineta, Secretary of the U.S. Department of Transportation, for sex, race, national origin, and age discrimination under Title VII and for intentional infliction of emotional distress under Texas law. By order dated December 14, 2004, the two cases were consolidated for all purposes. *See* Order, 12/14/04.

248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A summary judgment movant who does not have the burden of proof at trial must point to the absence of a genuine fact issue. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). The burden then shifts to the nonmovant to show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 113 S.Ct. 82 (1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Topalian*, 954 F.2d at 1131.

A.

The threshold issue raised by defendants is whether plaintiff's *Bivens* and state tort claims are preempted by the Civil Service Reform Act ("CSRA"), Pub.L. No. 95-454, 92 Stat. 1111 (1978).[4] The CSRA establishes a comprehensive framework for evaluating adverse personnel actions against federal employees and provides "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Rollins v. Marsh*, 937 F.2d 134, 137 (5th Cir. 1991), *quoting United States v. Fausto*, 484 U.S. 439, 445, 108 S.Ct. 668, 672, 98 L.Ed.2d 850 (1988). In particular, Chapter 23 of the CSRA prohibits certain personnel practices and establishes merit-system principles that govern civil-service employment. *See, generally* 5 U.S.C. §§ 2301-02. The merit-system principles include treating employees fairly and equitably and "with proper regard for their privacy and constitutional rights." *Id.* at § 2301(b)(2). Among the prohibited personnel

---

[4] Defendants also move to dismiss plaintiff's *Bivens* claim on grounds of qualified immunity and Title VII preemption. In view of the disposition of this motion, the court need not address these arguments.

practices are taking any "personnel action" that violates merit-system principles. *Id.* at §
2302(b)(12). "Personnel actions" include promotions and demotions, disciplinary or corrective
actions, transfers and reassignments, performance evaluations, decisions concerning pay, benefits
or awards, and changes in job duties or responsibilities. *Id.* at § 2302(a)(2)(A). The CSRA also
prohibits willful obstruction of an employee's work performance. *Id.* at § 2302(b). In light of this
"elaborate remedial system," courts have declined to recognize a remedy for federal employees
beyond that provided by the CSRA for claims arising out of an employment relationship. *See Bush
v. Lucas*, 462 U.S. 367, 368, 103 S.Ct. 2404, 2406, 76 L.Ed.2d 648 (1983); *Grisham v. United
States*, 103 F.3d 24, 26 (5th Cir. 1997).

1.

*Bivens* recognizes a private cause of action against government agents acting in their
individual capacity for alleged constitutional deprivations. However, the Supreme Court has
cautioned that a damage remedy arising directly under the Constitution would not be implied where
there are "special factors counseling hesitation in the absence of affirmative action by Congress."
*Bivens*, 91 S.Ct. at 2004. Where, as here, a federal employee brings a *Bivens* action for
constitutional violations arising out of her employment, "special factors" exist so as to preclude
judicial action. *Bush*, 103 S.Ct. at 2404 (First Amendment claims barred). *See also Morales,* 947
F.2d at 768 (Fifth Amendment claims barred); *Rollins,* 937 F.2d at 139 (First, Fourth, Fifth, Sixth
and Fourteenth Amendment claims barred); *Saul v. United States*, 928 F.2d 829, 840 (9th Cir. 1991)
(Fourth Amendment claims barred).

2.

The gravamen of plaintiff's constitutional claim is that defendants violated her Fourth and
Fifth Amendment rights by seizing her work computers without notice or a warrant, by purging

evidence of suspected criminal activity from her computers, and by retaining her computers for an unreasonable amount of time. (*See* Plf. MSJ Resp. at 6).[5]  Plaintiff also sues for negligence and intentional infliction of emotional distress in connection with the manner in which defendants conducted their investigation and suspended her for reporting the misconduct of other FAA employees. (*See id.* at 13).  In an attempt to salvage her *Bivens* and state tort claims, plaintiff relies on a footnote in *Bush*, wherein the Court observed that "certain actions by supervisors against federal employees, such as wiretapping, warrantless searches, or uncompensated takings, would not be defined as 'personnel actions' within the statutory scheme." *Bush*, 103 S.Ct. at 2415 n.28.

The critical inquiry in deciding whether conduct constitutes a "personnel action" is the relationship between defendant's actions and plaintiff's employment. *See Collins v. Bender*, 195 F.3d 1076, 1079 (9th Cir. 1999); *Rollins*, 973 F.2d at 138.  Here, the seizure and examination of plaintiff's computers were clearly related to her status as an FAA employee.  Defendants seized the computers from plaintiff's office as part of an investigation into her alleged misconduct and that of a co-worker, Melissa Kerwin.  No personal computers or other property belonging to plaintiff were taken by defendants.  Nor did defendants search her home.  Under these circumstances, the court has little difficulty in concluding that plaintiff's *Bivens* and state tort claims "arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States[.]" *Bush*, 103 S.Ct. at 2406.  *See also Saul*, 928 F.2d at 840 (seizing and opening federal employee's personal mail addressed to him at work constituted "personnel action").  *But cf. Stewart v. Evans*, 275 F.3d 1126, 1130 (D.C. Cir. 2002) (warrantless search of federal employee's private papers was not a "personnel action" covered by the CSRA);

---

[5]  Plaintiff also alleges a violation of her Fourteenth Amendment rights. (*See* Plf. Orig. Compl. at 12, ¶ 43). However, as defendants correctly note, the Fourteenth Amendment does not apply to the federal government or its agencies. *See McGuire v. Turnbo*, 137 F.3d 321, 323 (5th Cir. 1998).

*Collins*, 195 F.3d at 1077 (same as to search of federal employee's residence).  As a result, all claims other than plaintiff's Title VII claim are preempted by the CSRA.[6]

B.

Even if her *Bivens* claim was not precluded by CSRA, plaintiff cannot establish the violation of a federally protected right.  *See Broadway v. Block*, 694 F.2d 979, 985 (5th Cir.1982).  A workplace search by a government employer implicates the Fourth Amendment only if the employer's conduct infringes upon the employee's reasonable expectations of privacy.  *O'Connor v. Ortega*, 480 U.S. 709, 725-26, 107 S.Ct. 1492, 1502, 94 L.Ed.2d 714 (1987); *United States v. Thorn*, 375 F.3d 679, 683 (8th Cir. 2004), *jmt. vacated on other grounds*, 125 S.Ct. 1065 (2005); *Leventhal v. Knapek*, 266 F.3d 64, 73-74 (2d Cir. 2001).  Moreover, a federal employer may, consistent with the Fourth Amendment, conduct a workplace search without a warrant and without probable cause when there are reasonable grounds to suspect work-related misconduct.  *O'Connor*, 107 S.Ct. at 1502; *Thorn*, 375 F.3d at 683; *Leventhal*, 266 F.3d at 73-74.  Here, plaintiff did not have a reasonable expectation of privacy with respect to her work computers.  (*See* Def. App. at 1).[7]

Defendants were fully justified in seizing and searching plaintiff's computers after learning that she

---

[6] Title VII actions by federal employees are expressly excluded from the CSRA. *See* 5 U.S.C. § 2302(d); *Jones v. Reich*, 1997 WL 376053 at *1 (N.D. Tex. Jun. 30, 1997).

[7] The FAA computer use policy, as disclosed to employees before they log on to the system, provides, in pertinent part:

> This is a Federal Aviation Administration (FAA) computer system.  FAA systems, including all related equipment, networks, and network devices (specifically including Internet access) are provided for the processing of official U.S. Government information. Unauthorized access or use of this computer system may subject violators to criminal, civil, and/or administrative action.
>
> All information on this computer system may be intercepted, recorded, read, copied, and disclosed by and to authorized personnel for official purposes, including criminal investigations.  Access or use of this computer system by any person, whether authorized or unauthorized, constitutes consent to these terms.

(Def. App. at 1).

copied files from a co-worker's computer and shared that information with her husband in violation of FAA policy.  Although plaintiff attempts to recast her constitutional claim as a violation of the right to report and provide evidence of suspected criminal activity, no such right exists under the United States Constitution. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973) (private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another).

## CONCLUSION

Defendants' motion to dismiss is granted.  Plaintiff's claims for civil rights violations under *Bivens* and for negligence and intentional infliction of emotional distress under Texas law will be dismissed with prejudice by separate judgment issued today.

SO ORDERED.

DATED:  April 26, 2005.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE